Dillon, J.
The relator, a tax-payer, on the refusal of the prosecuting attorney to bring action, has filed a petition -of considerable length, in which he asks that the defendant prosecuting attorney and his assistants be enjoined from drawing certain warrants for fees and compensation growing out of litigations against insurance companies to recover taxes; that all the acts and statutes hereinafter named under which the prosecuting attorney and his assistants have been acting in exercising the functions of their office, and under which the county commissioners and county auditor and treasurer have been employing counsel, may be declared unconstitutional and void; and that defendants hfe required to account for and refund all moneys which they have heretofore drawn from the county treasury under said sections. The issues are made up 'as. to certain questions of fact and a stipulation has been filed agreeing to certain facts in this case and the ease has been argued on briefs 'and submitted to the court.
This case is one of considerable importance; it was advanced for hearing and was the last ease heard by this court, and the necessity for immediate decision upon the case will be some excuse for the brevity which the court must employ in its decisions.
The first question raised is as to whether or not relator is a tax-payer? In last April the relator returned $100 of personaLty for taxation, but will not until December actually pay any taxes thereon. I think this is sufficient to- give him the legal status of a tax-payer as contemplated by the statute. The tax itself is a burden imposed by law upon property and a taxpayer is, of course, the -one who is obliged to pay the taxes. I *507 do not think the time of payment is material. He has not defaulted, and he now stands charged with the payment of taxes which will be due in December, but after property is once listed and returned to the auditor, it is said to be taxed. If any serious question should be made of this point a substitution may 'be had and the same decree entered as is now authorized by this opinion.
The first question raised by counsel for plaintiff is as to whether or not the assistant- prosecuting attorneys are officers. This question becomes important, in view of the argument that if they are officers they must be elected—not 'appointed—and their compensation provided by the statutes hereafter cited, would have to be fixed by law, and that power could not be delegated. It may be observed that this construction of the word officer and office as used in the Constitution has always been one of great difficulty, 'and it may be remarked, not at -all facetiously, that the only satisfactory method of determining many of these cases is' to have the opinion of the eonrt of last resort.
The provision for assistants is created by the Legislature. They are required to give bond and to,take an oath of office, their term of. office is fixed by the Legislature for a definite time and they are paid out of the county treasury. They are not, therefore, temporary agents or deputies, ‘but have duties to perforan concerning the public. It is certain that they must be distinguished froan servants, employes and deputies who take no oath, give no bond, who serve at the pleasure of the chief officer, • and whose compensation is paid by such chief officer. And yet each and all of these attributes are true of many deputy clerks of our different county officers and they have been held not to be officers within the meaning of the Constitution.
In the case of State v. Brennan, 49 O. S., 33, the act of March 14, 1890 (89 O. L., 89), created the position-of stationery storekeeper for Hamilton county at a salary of $1,500 a year and provided that he should be appointed by the clerk of the court of common pleas. This act was held to be the creation of a county officer, and therefore wias in conflict with Sections 1 and 2 of Article X of the Constitution, which require all *508 county officers to be elected. In the ease of State v. Kendle, 52 O. S., 356, the act of April 23, 1894 (91 O. L., 176), which creates and confers upon the common pleas judges power to appoint jury commissioners for each county, was held not to be. in conflict with any provision of the Constitution, and that such commissioners were not officers within the meaning of the Constitution. These commissioners were appointed for a definite time, and were required to take the oath and had a definite function to perform. In that case the court admitted the difficulty of •this question, and seemed to base their opinion that the act was constitutional on the ground that there was a reasonable doubt •about the question, and in such eases the doubt should be resolved in favor of the law. The theory of the court further was, that such officers were but hand-maids or assistants to the court in carrying out its functions.
Of course in a general sense jurors themselves are officers of the court. Court bailiffs and constables may likewise be termed officers, and the deputies of our various county officers are also in a sense officers. These assistant prosecuting attorneys have no functions- different from that of the prosecuting attorney himself, and their powers are not equal to his. Even the power of an assistant prosecuting attorney to enter the grand- jury room has o-nily recently been conferred by statute. They are subordinate to him, and as to 'any question of policy to be pursued they have no voice as against the will of the prosecuting attorney. In the -creation o-f these assistant prosecuting attorneys it will be observed that no new county -office was created. The law simply provided for assistants to carry -out the function of the office previously created, and I am, therefore, of the opinion that the office of assistant prosecuting attorney, is not one as- that word is used in Sections 1 and 2 of Article X of the Constitution, but that they are persons authorized to be employed for the purpose of assisting an -officer in an office already provided for by law.
Certain moneys w-ere' drawn by the defendant prosecuting attorney under Section 1297 as salary. This s-ection provides that prosecuting attorneys shall receive an annual salary of not *509 more than $3,500 in Hamilton county, $4,000 in Cuyahoga county, $2,000 in Lucas and Franklin and Montgomery counties, and all counties having less than 20,000 inhabitants $400, and in all other counties $2.00 for each one hundred inhabitants.
If the uniform method prevailed of $2.00 for each 100 inhabitants, which applies to 'all but the particular counties named, the Prosecuting Attorney of Franklin County would have drawn almost double the $2,000 which was paid 'him. If the statute be read to mean that in 'all counties the prosecuting attorney’s salary should be $2.00 for each one hundred inhabitants, excepting the counties named, the question might well arise as to whether or not the exception itself is not void, and- these prosecuting attorneys would have a right to complain and insist upon a rate of $2.00 for each one hundred inhabitants. It can not be claimed that it is the intention of the Constitution, Section 26, Article II, requiring all laws of a general nature to have a uniform, .operation, that each prosecuting attorney shall receive the same compensation, but whether this section be constitutional or not, it is not necessary here to consider. This statute has been in existence since 1862 and all the business of the state of Ohio-, and of -every prosecuting attorney in the state has been transacted thereunder. Compensation, therefore, paid to such officers, can not be recovered back on clearest principle, nor can any of the acts -of these officers be impugned even if they should be held to- have been acting de facto. This was the only statute in existence which provided compensation for the prosecuting attorneys of the state. And that a de facto officer is entitled to have considered and treated that, not -only his services as such officer were legitimate, but also the compensation attached thereto, I think is fully sustained in the ease of State, ex rel Attorney-General v. Beacon, 66 O. S., 491. If the division of compensation provided by 1297 is such as presents -a vice under the Constitution of the state of Ohio, it would seem to me the only persons who could complain would be those in the excepted counties who receive- less than $2.00 for each one hundred inhabitants, nor am I disposed to believe that a reasonable limitation upon this basis of $2.00 per one hundred inhabitants in the *510 larger counties is. unreasonable or special in that it applies to all the large counties. Certainly no public interest will be sub-served by enjoining the payment of any salary to any of the prosecuting attorneys of this state. In the Cleveland case above cited the Supreme Court of Ohio found that each officer of the city of Cleveland was acting under an unconstitutional law, and that these acts provided not only for the title to the office, but also for the compensation to be paid such incumbent.
But it is claimed by the plaintiff that Section 1297 is unconstitutional because there is not a uniform rate of compensation provided for. It is certainly right and proper that there should be .a .different rate of compensation provided for in the different counties. It woull be carrying the recent doctrine of the Supreme Court to the production- of great mischief and vice to say that because counties like Hamilton county or Cuyahoga or Franklin county must ¡have officers of great ability, who must be paid large compensation, and who also must have 'assistants to perform their work, that, therefore, the prosecuting attorney in the smaller counties in the state have the same compensation and the same assistants. The'compensation of prosecuting attorneys as ‘such- is of course a matter of general nature, but the rate of compensation is one of local nature, and each county should have the right by law to- pay its prosecuting attorneys, a reasonable compensation for the particular work of that kind,' and not be compelled to pay the sum of $4,000 because the larger counties must pay that compensation. The distinction in salaries of 1297 are eminently just and reasonable, and the only party who could complain -at all would be the counties which are excepted from the $2.00 rate. But if I should be disposed to take the -extreme view and apply the Cleveland case with a vengeance, I -would not enjoin any action under this law until the Legislature has had full and 'ample time to provide a law to take its place.
The next statute complained of is 1271. This section provides that in Hamilton county, Cuyahoga county, in Franklin county and in Lucas county, assistant prosecuting attorneys may bo appointed upon the nomination of the prosecuting attorney *511 by the common pleas judges. In Franklin county a limit is placed as to- their compensation, but it may be made -any sum less than that as the judges may determine. It is claimed on the part of the plaintiff that this section (which has since been repealed and .the new statute substituted) is unconstitutional because it provides for assistant prosecuting attorneys in a few counties only. Much .of. my observations upon the previous statute may be applicable here. It is true that the general subject of prosecuting attorney is one of a general nature .and must have uniform operation throughout the state, but the question as to whether or not there is needed one, two, three, or four assistant prosecuting attorneys is purely local, growing out of the increased population and large business of a few coun ties, and with which only ¡a few counties are concerned. The needs of these few large counties of several assistant prosecuting attorneys should not compel us to saddle the same number of assistants upon every county in the state-, but it is only necessary for me to say as far as this section here is involved, that the money which has been paid’-out under that act can not be re-covered back whether the act was unconstitutional.or not.
The very wholesome discussion of the court in the case of State v. Gardner, 54 O. S., 24, is quite refreshing in view of some of the present extreme theories- advanced which would, it seems, take from every county the last vestige of home rule, and foist upon counties-and cities expensive governments and officials under the guise of necessity under the Constitution, and this last named case is a sufficient answer to the claim that .any money paid out under these old sections may be recovered back.. In this- -act the Legislature itself fixed th-e -compensation ■a-nd only authorized the judges to decrease the amount if they deemed best.
The next section involved is 1274. This section provides that the prosecuting attorney shall be the legal adviser of the county commissioners -and other county -officers, and for his services the county commissioners shall make such an allowance as they think proper. The section further very properly provides that this -act shall not apply to any county having a county solicitor. *512 It is -claimed that because of this last provision the act is unconstitutional. Counsel in making this cla.im fails to distinguish' between a statute making an exception of certain counties, and one which simply limits the operation of the law uniformly throughout the state. This act does not say that the provision shall not apply to certain counties, but the provision is most applicable and is made to apply to every county generally, excepting those who come under a certain provision and the way is open and clear to any county to bring itself under the exception 'as it m!ay wish. Therefore, any county which shall obtain for itself a county solicitor is forbidden to also waste the county funds by employing a special attorney for civil work. The operation of this statute is general and uniform and is not exclusive of any county. Any county, therefore, which may now or hereafter have a county solicitor to take care of the civil business of the county is rightfully and wisely prevented from wasting the county funds by also employing the prosecuting attorney. There is not a particle of doubt as to the constitutionality of this section as well as to the wisdom of it.
It is further -claimed, however, that this provision is unconstitutional because it permits the county commissioners to fix the compensation. While n-o claim is being made under this statute by the defendants -herein, plaintiff has raised the question and desires an opinion -on the same, and I will, therefore, pass upon this second point involved. The right of the commissioners to fix compensation has been recognized almost since their cr-eati-on. The employment of- an -attorney by them and the payment of him, -of his compensation is the exercise of a function no different from .their employment of a contractor to build -a house, or the purchase of supplies. The right of the commissioners to employ counsel for the use of the county and their officials is not denied. The payment to such counsel for their -services is not the fixing -of the compensation of an office, and is n-ot forbidden by any law which has been ci-ted to me.
The next section involved is 2862. This -section provides that whenever .any action may be commenced against the county treasurer or county auditor or other -county -officer, for perform *513 ing or attempting to perform any of tbeir duties, their reasonable counsel fees may be allowed them. The same proviso, however, is here found as was above discussed, to-wit: That where a county has a county solicitor it shall be his duty to perform these legal services and the 'act shall not apply. I have already answered this claim.
The next section involved here is Section 1001-2-3 (90 O. L., 67), which permits the commissioners or any county officer to ■have counsel in cases in the United States court either for or ■against them. The same claim is made against this statute that it exempts such officer to so- employ counsel where they have a county solicitor.
The next section involved is old Section 845 (91 O. L., 142). The same reason applies to this statute as to its exempting counties -having county solicitors.- The new Section 845 (97 O. L., 304) it is claimed is unconstitutional because it contains more than one subject. This has been sufficiently answered by our Supreme C-ou-rt and need not be discussed here. The other complaint -against this section is that it permits the county commissioners to fix the compensation. This I have also decided does not affect the constitutionality of the -act at all. Counsel claims with regard to this section, however, that the attorney who was employed 'by the commissioners should be an outsider, and should not be the prosecuting attorney who has his own duties to perform. The.-argument made under this head might be conceded to be proper before the legislative body, but the 1-aw itself being constitutional, and no law or eonstitu•tional provision forbidding the prosecuting attorney to be employed to do such work, it is not for the court to substitute its judgment as to the propriety of the county commissioners émploying the prosecuting attorney. Th-e answer to this 'argument is that the law itself permits it and does not prohibit it, and the court can not substitute its- discretion for that of the commissioners, however much it might, as a matter of policy, disagree with that board.
On October 16, 1900, the commissioners made a contract by resolution whereby the defendant prosecuting attorney was em *514 ployed to represent the auditor and treasurer in all suits which may 'be instituted against those officials, or which they might institute for the collection, of taxes, with special reference to foreign corporations which has securities' deposited with the officials of the state of Ohio, and it thereby allowed a contingent fee of five per cent, upon all money which should be paid in by reason of his services. The resolution itself refers to any suit or suits which might be instituted by or against. Under this contract the defendant attorney tried a test case in the United States Court which went to the Supreme Court of the United States, 'and which was successful. Certain other foreign corporations agreed to be bound by the test case thus submitted. It is claimed that recovery can only be had for five per cent, of the amount recovered from the particular case filed and taken to the Supreme Court of the United 'States. I know of no doctrine of law, justice or equity which could be applied to this contract and which would sustain such a contention. It is true the treasurer had his remedy under Section 1095, which he might exercise. Just why the treasurer did not, in the exercise of his discretion, pursue that particular method of obtaining this money, it may not be pertinent for the court to inquire, but one thing is quite evident to- the court, and that is that had the treasurer attempted any such form of collection, these .foreign insurance companies would have promptly taken him into -the United States Court and the test case would have -gone to the United States Court just the same. The question involved was a most novel one, and one of great importance. Of course the prosecuting attorney might have brought as many actions as he pleased, and the insurance companies might have done the same thing, but the method pursued was the orderly and legal one, to have one case determined for all and to be used as a precedent.
As to the 'amount of these fees, that was discretionary with the commissioners. It is familiar to the legal profession that where an ¡attorney takes a case upon a contingent fee, that is to say, where he is to receive no p.ay at all unless he is successful in obtaining a fund, that the amount of fees are higher *515 than where he is to be paid for his services irrespective of the results of litigation. Contingent fees range all the way from five per cent, to fifty per cent., and while I do not know all the facts and circumstances of these eases I am not prepared to make any criticism of the commissioners for their act in making the compensation five per cent, on a basis of recovery, and nothing if they were not successful.
It is said, however, that by this agreement of October 16, 1900, the prosecuting attorney can only have five per cent, upon any suit which was brought in the Federal court, because Section 1001-2-3, only authorizes the employment of actions brought against the officers in the Supreme Court and that since only one ease, to-wit, the Western Insurance Company. Of course the prosecuting attorney can not be paid twice. If he w;as paid a commission of five per cent, for taxes brought in by reason of the Western Insurance Company, he can not again be paid a commission upon'the same taxes brought from some other source, but I fail to find any such situation. The taxes which were collected and brought into the county treasurer by reason of the Western Insurance Company case, whether the parties had their suits actually brought or were biding by the result of that ease, should be the basis of the prosecutor’s five per cent, commission.
On April 9, 1904, the defendants, Taylor, Seymour, Webber & King were employed to act as counsel for the treasurer and auditor in three cases, 1154. 1155 and 1156, in the Circuit Court of the United States, Southern District of Ohio, and also were authorized to proceed under the laws of Ohio to collect all taxes and cover the same into the treasury, and were allowed compensation of ten per cent, for recovering the taxes by whatever method they would pursue.
This contract refers exclusively to a definite set of persons, to-wit, certain insurance companies which have deposited with the superintendent, of insurance of the state and was limited to those particular companies.
On May 8, 1904, however, a general contract was entered into whereby the defendant attorneys were made legal counsel and *516 advisors for the board of commissioners and all the other county officers and boards. They were, by 'this contract, bound to furnish all these persons with opinions and instructions, to defend and prosecute all actions for or -against any of them, and their compensation was fixed.
The question raised is as to- whether or not this superseded the special contract for special purposes which had been entered into less than a month before. If the parties, by the language used in this second contract abrogated the first, no recovery can be made under the first contract. I can not so construe the second contract. The specific work there outlined and which was to be performed upon a contingent fee, and which work had been entered upon, renders i-t very doubtful that it was intended to be and was superseded by the general contract afterwards entered into. The parties themselves did not so treat their contracts, and they themselves have refused to abrogate the first, and have never considered that they did abrogate it. If either party should attempt to- .abrogate it, it would still be in the power of the -other party to raise the question and perform the other contract, and since they both agree -and consent -that it was never abrogated, we would be in the same position as we were before. It is quite evident that the county commissioners could not abrogate the first contract without the consent of the parties thereto, and they themselves having expressly disclaimed any such interpretation of their second contract, I do not believe it is in the province of this court to -so declare unless the second contract would el-early take the place of the first.
Another complaint is made that an allowance o-f $1,250 a year was made commencing September 16, 1899, to. the prosecuting attorney under Section 845. This section provided that the county commissioners -might allow not to exceed the sum of $250 in each ease in which counsel may be employed, either in bringing or defending a suit if they are acting as a body corporate for the county. The county commissioners in lieu of this allowance passed this, resolution agreeing to give the prosecuting attorney $1,250 a year, being an average of five cases per year. The legality of the contract depends altogether *517 upon what the actual facts have been since that time. If the number of cases would exceed the average of five cases a year during the incumbency of the defendant prosecuting attorney, I will sustain the amount paid out under this agreement. I can readily see that if the county commissioners have had a great many cases, and they found they would be out a large amount of money, that they might in the interest of economy make such a contract, but if, as a matter of fact, there have been on an .average of less than five cases a year, the contract will have to be annulled as to the difference between $1,250 a year and the maximum which the county commissioners might have allowed for the actual cases. I allow all the expense items.
J. S. Gill and M. E. ThrailMll, for plaintiff.
George S. Peters and E. L. Taylor, Jr., for defendants.
A final complaint is made by the plaintiff that, assuming all these acts to be constitutional, and all the contracts to be legal and giving defendants the benefit of every claim made by them, nevertheless, they have been paid the sum of $37,468.19, but would only be entitled, as a matter of fact, to '$35,065.19, and, therefore, they have on their own .admission been overpaid $2,403. This is squarely denied by the defendant, and if the parties can not agree upon these facts, of course the court will order an accounting. .